UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 21-228 (DWF/ECW) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Marques Dwell Armstrong, Jr., | |
| Defendant. | |

INTRODUCTION

This matter is before the Court on Defendant Marques Dwell Armstrong, Jr.'s motion for judgment of acquittal.  (Doc. No. 125.)  The United States of America (the "Government") opposes Armstrong's motion.  (Doc. No. 135.)  For the reasons discussed below, the Court respectfully denies the motion.

BACKGROUND

Armstrong was charged with one count of possessing a machinegun and one count of being a felon in possession of a firearm.  (Doc. No. 1 at 1-2.)  After a multi-day trial, a jury convicted Armstrong on both counts.  (Doc. No. 104.)  Armstrong now moves for judgment of acquittal.  (Doc. No. 125.)

DISCUSSION

Rule 29 of the Federal Rules of Criminal Procedure provides that a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  When deciding a motion for judgment of

acquittal, the Court views the evidence and all reasonable inferences from it in the light most favorable to the jury's verdict. *United States v. Seibel*, 712 F.3d 1229, 1236 (8th Cir. 2013). If there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt, the verdict must be upheld. *United States v. Espinoza*, 885 F.3d 516, 520 (8th Cir. 2018).

Armstrong argues that acquittal is appropriate because the government failed to prove Armstrong's guilt beyond a reasonable doubt. Specifically, Armstrong argues that no reasonable jury would find, beyond a reasonable doubt, that he possessed a firearm because (1) no officer saw Armstrong with a firearm; (2) Lieutenant Jeffrey Waite testified that he had eyes on Armstrong the entire time but never saw a firearm; (3) Armstrong's DNA was not found on the firearm; (4) police failed to investigate whether the firearm was owned by someone else in the neighborhood; and (5) Armstrong fled because he knew a warrant had been issued for his arrest, not because he had a firearm.

Based on a review of the evidence submitted at trial, the Court concludes that there is sufficient evidence for a reasonable jury to find, beyond a reasonable doubt, that Armstrong possessed a firearm. Evidence at trial showed that on the morning of October 12, 2021, police tried to arrest Armstrong based on an outstanding warrant. (Doc. No. 130 ("Transcript 1") at 107-10, 136-37.) Armstrong fled in a vehicle, driving off the road and between two buildings, before losing control and crashing. (*Id.* at 94, 110-11, 137-39.) Armstrong then fled on foot. (*Id.* at 90-91, 139.) Lieutenant Waite saw Armstrong take off running and fall face-first into tall grass. (*Id.* at 140-44.) Armstrong

2

then got up and continued to run before surrendering to police. (*Id.*) At the time of his arrest, Armstrong was wearing a cross-body satchel that was partially unzipped. (*Id.* at 64-71.) Sergeant Adam Lepinski testified that, based on his training and experience, cross-body satchels, like Armstrong's, were commonly used to hold firearms. (*Id.*) For that reason, police suspected that Armstrong may have discarded a firearm during his flight, and they subsequently searched the path that Armstrong had run. (*Id.* at 71-75.) Police found a Glock handgun with a switch in the tall grass, exactly where Armstrong had fallen. (*Id.* at 71-75, 147-48.)

Additionally, the jury heard testimony that Armstrong admitted to acquiring, storing, and possessing firearms for convicted felons between 2010 and 2014. (Doc. No. 131 ("Transcript 2") at 152-53.) The jury also saw a portion of a rap video that was posted on YouTube less than one month prior to Armstrong's arrest and featured him rapping about having a Glock with a switch. (*Id.* at 105, 155-56.) In the video, Armstrong lifted up his shirt, exposing what appeared to be a firearm in the waistband of his pants. (*Id.* at 155-56.) The Court instructed the jury that they could consider the evidence for the limited purposes of deciding whether Armstrong had the motive or intent to possess the firearm charged in the Indictment; whether he knowingly possessed the firearm charged in the Indictment; whether he was aware of the physical characteristics that made the firearm charged in the Indictment a machinegun; and whether he knew how to acquire a firearm as a convicted felon. (*Id.* at 148-49, 153-54; Doc. No. 101 at 7.)

Armstrong contends that this case is similar to *United States v. Parker*, 871 F.3d 590, 604 (8th Cir. 2017), where the Eighth Circuit vacated the defendant's firearm

3

possession conviction due to insufficient evidence. The defendant in *Parker*, Veltrez Black, was in the passenger seat of a vehicle when police tried to stop the vehicle. *Id.* at 603. While the Government argued that Black fled because he knew he had a warrant for his arrest, Black was not the one driving the vehicle. *Id.* Moreover, the gun at-issue was found on the side of the road. *Id.* at 603-04. No one saw the gun being thrown and no one saw the vehicle drive by the spot where the gun was thrown. *Id.* The Court concluded that "assuming the firearm came from the vehicle at all [wa]s speculative." *Id.* at 604.

Unlike *Parker*, the evidence here was sufficient for a reasonable jury to find that Armstrong possessed a firearm. Armstrong's decision to flee was his own—he was the driver of the vehicle when he fled from police, and he was alone at the time of his arrest. While no one saw Armstrong with the firearm, circumstantial evidence tied him to the weapon. Unlike in *Parker*, where no one saw the vehicle drive by the place where the firearm was found and where multiple people could have been responsible for throwing the firearm out of the car window, here police saw Armstrong fall in the tall grass and the firearm was recovered in that exact spot minutes later. Moreover, the landlord of residence where the firearm was found testified that he had sprayed that same grassy area in the beginning of October and had not seen a firearm then. (Transcript 1 at 198.)

In addition, when Armstrong was arrested, he was wearing a satchel—which police knew were commonly used to carry firearms—and the satchel was partially unzipped. (*Id.* at 64-71.) Lieutenant Waite had eyes on Armstrong's back as Armstrong fled, but he admitted that he "couldn't see what [Armstrong's] hands were doing in front

4

of him at all." (*Id.* at 158.)  The satchel was located in the front of Armstrong, out of Lieutenant Waite's sight.  (*Id.* at 157-58.)  Armstrong notes that no DNA evidence tied him to the firearm, but forensic scientists, Nicole Ford and Amber Folsom, testified that it was common in their experience to not obtain sufficient DNA or fingerprint evidence on a firearm after testing.  (*Id.* at 229; Transcript 2 at 38-39.)  And in a YouTube video posted less than one month before Armstrong's arrest, Armstrong appeared to have a firearm in the waistband of his pants and rapped about having a Glock with a switch—the same kind of firearm found after Armstrong's fall.  (Transcript 2 at 105, 155-56.)

Finally, while Armstrong argues that he fled from the police because he knew a warrant had been issued for his arrest, he also could have fled because he illegally possessed a machinegun.  Both inferences are reasonable.  "[E]ven if the evidence rationally supports two conflicting hypotheses," the Court will not disturb the conviction.  *United States v. Morris*, 791 F.3d 910, 913 (8th Cir. 2015).  In sum, based on the evidence presented at trial, a reasonable jury could find that Armstrong possessed a firearm.  The Court therefore denies Armstrong's motion for judgment of acquittal.

## ORDER

Based upon the record before the Court, and the Court being otherwise duly advised in the premises, **IT IS HEREBY ORDERED** that Defendant Marques Dwell Armstrong, Jr.'s motion for judgment of acquittal (Doc. No. [125]) is **DENIED**.

Dated:  May 4, 2023                                  s/Donovan W. Frank
                                                                      DONOVAN W. FRANK
                                                                      United States District Judge