UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-228 (DWF)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) |
| v. | ) GOVERNMENT'S SENTENCING ) MEMORANDUM ) |
| MARQUES DWELL ARMSTRONG, JR., | ) ) |
| Defendant. | ) ) |

The United States of America, by and through its undersigned attorneys, hereby respectfully submits its position and memorandum on sentencing. For the reasons that follow, the United States recommends concurrent sentences of 120 months for the two counts of conviction as a sentence that is sufficient but not greater than necessary to comply with the Section 3553(a) sentencing factors. Additionally, the United States recommends a consecutive sentence of 24 months for his (second) supervised-release violation, again involving a firearm.

**RELEVANT FACTS AND PROCEDURAL BACKGROUND**

The United States agrees with, and incorporates by reference, the facts from the "Offense Conduct" section of the PSR, ¶¶ 5-11. As shown at trial, in October 2021, when Minneapolis Police Gun Investigation Unit investigators and ATF agents attempted to stop and arrest the defendant in a residential parking lot on outstanding state and federal warrants, he rapidly accelerated, drove over parking curbs, onto the grass between buildings, nearly hitting a telephone pole retention wire, over the curb, onto a city street,

and rapidly fled the area. (PSR ¶¶ 7-9; GE 1A, 2, 38, 39)[1] As police chased the defendant's vehicle with lights and sirens throughout the densely residential neighborhood at high speeds, the defendant ran a stop sign and rapidly turned onto another residential street, lost control of the vehicle at the intersection, jumped a curb, sideswiped a tree, spun out, and disabled the vehicle near the intersection. (PSR ¶ 9; GE 1A, 2, 8)  The rear axle broke off both rear tires of the vehicle, which had other significant body damage. (PSR ¶ 9; GE 8)




Officers observed the defendant flee the wrecked vehicle on foot through residential yards, as they continued to give chase. (PSR ¶ 9)  A chasing officer saw the defendant fall face first into some tall decorative grass that abutted a residential driveway.  The defendant got up and continued running along the front yards of the residences, and ignored orders to stop, cutting through some woods in a residence's back yard. (PSR ¶ 9; GE 3)  Several hundred feet later, the defendant finally stopped running and was arrested at gunpoint. (PSR ¶¶ 9-10; GE 3)

Officers removed a black cross-body satchel—commonly used to carry and conceal firearms—from the defendant, and immediately noted that the satchel was unzipped and opened, prompting them to believe that the defendant might have discarded a firearm along

---

[1] References to government exhibits, "GE", are to the government's trial exhibits.



his path of flight. (PSR ¶ 10; GE 4, 5, 9, 10). Within minutes of his arrest, an officer located, directly in the tall grass where he saw the defendant fall, a Glock 9mm firearm, with an inserted high-capacity magazine loaded with 24



rounds, and an attached machinegun conversion device enabling the firearm to fire as a fully automatic machinegun. (PSR ¶ 10; GE 6, 12, 17) The grass where the defendant fell was matted down in the shape of a torso, and the firearm was found about where the defendant's right hand would have landed. (GE 6, 17, 19; Excerpt of February 14, 2023, Trial Tr. [ECF 115] ("Waite Tr.") at 18-27)

Police photographed and recovered the weapon. (GE 6, 15, 16, 17) A forensic firearms technician test-fired the weapon and confirmed that it fired in fully automatic mode, and an ATF firearms enforcement officer confirmed the weapon qualified and functioned as a machinegun. (GE 20) Investigators determined that the firearm with the inserted high-capacity magazine fit squarely within the defendant's cross-body satchel. (GE 41)





During a recorded jail call placed hours after the defendant's booking, the defendant told his girlfriend to "Turn my phone off. Turn my phone off. Lock that bitch out on their ass. Report that bitch stolen. Make sure they can't get nothin' out that bitch they goofy ass fuck them. Turn my shit off. Report my shit stolen. Right now." (PSR ¶¶ 11, 13)

In October 2021, a grand jury returned a two-count Indictment, charging the defendant with possession of a machinegun, in violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2), and with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), each of which carries a statutory maximum term of 10 years' imprisonment. (PSR ¶¶ 1, 100; ECF 1)

Following a four-day trial in February 2023, the jury found the defendant guilty of both counts. (PSR ¶¶ 2, 15, ECF 100, 104) The Court denied the defendant's motion for judgment of acquittal at the close of the evidence, as well as after the verdict. (ECF 99, 138)

On May 5, 2023, the United States Probation Office issued a final PSR, finding the total offense level to be 26 and his criminal history category to be VI,[2] resulting in an effective advisory Guidelines' range of 120 to 150 months' imprisonment, and a supervised-release period of between one and three years. (PSR ¶¶ 27, 52, 101, 105) The PSR found that a two-level obstruction-of-justice enhancement applied, under USSG § 3C1.1, because the defendant directed his girlfriend to conceal or destroy material

---

[2] The PSR also determined that the defendant had a total of 17 criminal history points, including two points for committing the current offenses of conviction while on felony supervised release for his state second-degree assault and federal felon-in-possession convictions. (PSR ¶¶ 47, 48, 51, 52)

4

evidence during the recorded jail call, hours after his booking. (PSR ¶¶ 11, 13, 22; Add. pp. A.1-A.2) The PSR also found that an additional two-level obstruction enhancement applied, under USSG § 3C1.2, for the defendant's reckless endangerment during his high-speed flight from police in the residential neighborhood, resulting in his wrecking the vehicle after jumping a curb and sideswiping a tree. (PSR ¶¶ 9, 14, 23; Add. p. A.2)

## ARGUMENT

In following the sentencing methodology laid out by the Supreme Court, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49-50. Section 3553(a) requires the Court to consider a number of factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a). But a district court is not required to provide a mechanical recitation of the Section 3553(a) factors and "has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." *United States v. Wisecarver*, 911 F.3d 554, 557 (8th Cir. 2018); *United States v. Ballard*, 872 F.3d 883, 885 (8th Cir. 2017); *United States v. San-Miguel*, 634 F.3d 471, 475-76 (8th Cir. 2011).

5

### A.     The Guidelines Calculations

The United States agrees with the calculated total offense level of 26, and the criminal history category of VI, resulting in a Guidelines range of 120 to 150 months' imprisonment. Although each count has a statutory maximum of 120 months, under 18 U.S.C. § 3584, the sentences for each count, at the Court's discretion and in consideration of the § 3553(a) factors, may be imposed consecutively or partially consecutively, as long as the multiple terms of imprisonment are treated as a single, aggregate term of imprisonment. *See* 18 U.S.C. § 3584(c). Accordingly, the defendant faces a potential maximum aggregate term of 240 months' imprisonment.

        1. Applicability of Obstruction-of-Justice Enhancement

The defendant objects to the two-level enhancement under USSG § 3C1.1 for obstructing or impeding the administration of justice arising from his directing his girlfriend during a recorded jail call to destroy or conceal evidence located on his cell phone. (PSR Add. pp. A.1 – A.2) The defendant claims that the cell phone evidence was suppressed and had nothing to do with his possession of a firearm. (Id. p. A.1) The defendant's claim lacks merit, and the application of the two-level enhancement is well warranted.

Generally, the United States must prove specific offense characteristics and adjustments that enhance a sentence by a preponderance of the evidence. *See United States v. Musa*, 830 F.3d 786, 788 (8th Cir. 2016); *United States v. Smith*, 656 F.3d 821, 825 (8th Cir. 2011); *United States v. Russell*, 234 F.3d 404, 408 (8th Cir. 2000). "The preponderance of the evidence standard is the lowest standard of proof available in the

6

law," and requires the proponent to show that the fact asserted is more likely true than not. *Ramirez v. Clinton*, No. 08-CV-8770 (DSD/JSM), 2011 WL 2838173, at *4 (D. Minn. July 18, 2011) (citing *United States v. Sparkman*, 500 F.3d 678, 685 (8th Cir. 2007) and 32A C.J.S. § 1628 (2011)).

The two-level enhancement under § 3C1.1 applies where a defendant attempts to obstruct or impede the administration of justice during the investigation, prosecution, or sentencing of the instant offense. USSG § 3C1.1. "The district court has broad discretion to apply section 3C1.1 to a wide range of conduct." *United States v. Collins*, 754 F.3d 626, 629 (8th Cir. 2014). And the Eighth Circuit has noted the enhancement readily covers conduct that includes "*concealing* or *directing or procuring another person* to . . . *conceal* evidence that is material to an official investigation or judicial proceeding . . . or attempting to do so." *United States v. Lamere*, 980 F.2d 506, 515 (8th Cir. 1992) (emphasis added). There can be no doubt that the cell phone evidence was material to the investigation, after all, the defendant moved (successfully) to suppress the cell phone evidence that contained multiple photos of the defendant with firearms, including the firearm he possessed on the day of his flight and arrest. Moreover, within hours of his arrest, the defendant called his girlfriend and directed her to conceal or destroy the evidence on his cell phone, underscoring its materiality to the investigation.[3] *See United States v. Brown*, 560 F.3d 754, 772 (8th Cir. 2009) (noting that § 3C1.1 readily includes attempts to obstruct, and co-

---

[3] This is apparently not the first occasion where the defendant has asked others to destroy or conceal evidence. In June 2019, the defendant allegedly called his girlfriend and asked her to have someone collect a firearm from his bedroom residence after he was arrested for a shooting. (PSR ¶ 65)

7

defendant's removal of item, after other co-defendant informed her that item contained evidence, supported finding that defendant made request "for the purpose of eliminating evidence at the trial"). The defendant's request to his girlfriend in this case were also made for the goal of eliminating evidence at trial. The two-level § 3C1.1 enhancement for obstruction of justice is warranted.

To the extent that the defendant argues that the cell phone evidence was immaterial and did not prejudice the government because the government obtained a conviction even without the cell phone evidence, the Eighth Circuit has rejected a similar argument as "unpersuasive." *See United States v. Martin*, 369 F.3d 1046, 1061 (8th Cir. 2004).

The totality of the facts and circumstances and the preponderance of the evidence warrants the application of the two-level enhancement under § 3C1.1 for the defendant's attempting to procure his girlfriend to conceal or destroy the evidence on his cell phone.

2. Applicability of Reckless Endangerment During Flight Enhancement

The defendant also objects to the application of the two-level enhancement under § 3C1.2 for reckless endangerment during flight, apparently because there is no evidence he created a risk of death or serious bodily injury to the officers. This claim also misses the mark and should be rejected.

USSG § 3C1.2 provides for a two-level increase if the defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." USSG § 3C1.2. *See United States v. Bates*, 561 F.3d 754, 756 (8th Cir. 2009) (discussing § 3C1.2). "Another person" is not limited only to law enforcement involved in the chase, but "includes any person, except a participant in the

offense . . . ." USSG § 3C1.2, cmt. n. 4. "Reckless" is an objective standard and means a situation in which the defendant is aware of the risk created by his conduct, and his disregard of that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation. *Bates*, 561 F.3d at 756. And "during flight," "is to be construed broadly and includes preparation for flight," and conduct that occurs while "resisting arrest." USSG § 3C1.2, cmt. n.3; *Bates*, 561 F.3d at 756-57.

Here, the defendant's high-speed flight from police in a densely residential neighborhood, which involved driving over curbs and onto the grass between residential apartment buildings, narrowly missing a telephone pole retaining wire, running a stop sign, losing control of the vehicle, jumping another curb, sideswiping a tree, ultimately causing the car to spin out, break both rear wheels off the rear axle and disable the vehicle at an intersection, readily warrants by a preponderance of the evidence a two-level enhancement for reckless endangerment during flight. *See United States v. St. James*, 415 F.3d 800, 806 (8th Cir. 2005) (upholding enhancement where defendant drove his car erratically at high speeds while fleeing from police, thereby placing both law enforcement personnel and the public in danger); *United States v. Madrigal-Lopez*, 236 F. App'x 233, 234 (8th Cir. 2007) (enhancement warranted in part where defendant involved in "high-speed chase" and "involved careening around curves on the highway," and ended with the vehicle crashing); *see also Bates*, 561 F.3d at 757 (citing *United States v. Moore*, 242 F.3d 1080, 1082 (8th Cir. 2001) (upholding reckless flight enhancement in part where defendant knew he was being pursued by police)).

Moreover, to the extent the defendant argues that the enhancement does not apply because no one was injured by his reckless driving conduct, "the enhancement does not require any injury or damage." *United States v. Bazaldua*, 506 F.3d 671, 675 (8th Cir. 2007). Rather, "[i]t only requires that the defendant's actions create 'a *substantial risk* of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer.'" *Id.* (emphasis in original); *see also United States v. Harper,* 466 F.3d 634, 649-50 (8th Cir.2006) (finding no clear error in applying § 3C1.2 and concluding that the fact that defendant was the only one injured did not alter the risk of bodily injury created by his flight); *see also United States v. Valdez*, 146 F.3d 547, 554 (8th Cir. 1998) ("We do not interpret § 3C1.2 to require that a high speed chase occur at night, in an urban area, or that any other vehicles actually ended up in harm's way."). Accordingly, the preponderance of the evidence shows that the two-level enhancement for reckless endangerment during flight should be applied to the facts and circumstances of this case.

### B. The Section 3553(a) Factors

A consideration of the § 3553(a) factors amply warrants concurrent sentences of 120 months' imprisonment on each count of conviction, with a consecutive term of 24 months' imprisonment for his (second) supervised release violation for yet another firearms-related offense while on federal supervised release for a firearms conviction.

#### 1. Nature and Circumstances of the Offense

As noted above, while armed with a machinegun and on supervised release for state and federal convictions involving firearms, the defendant recklessly fled police in a residential neighborhood at high speeds, until he completely wrecked his vehicle and then

fled police on foot. The defendant's flight by vehicle and by foot covered close to two football fields in length. In the exact spot where the defendant fell face first as he was running from police, an officer located a loaded Glock 9mm firearm, with an inserted high-capacity magazine loaded with 24 rounds, and containing a machinegun conversion device that enabled the firearm to fire in fully automatic mode. The defendant also posted rap videos touting his possession of a Glock with a switch and glorifying gang life. Moreover, this was the defendant's second supervised-release violation (involving a firearm) following his conviction in this district for felon-in-possession conspiracy (PSR ¶ 47) and his state conviction for second-degree assault with a firearm for shooting a person (PSR ¶ 48).

      2.  <u>History and Characteristics of the Defendant</u>

The United States submits that the PSR accurately and adequately describes the defendant's criminal history, personal history, and characteristics. Notably, although only 28 years old, the defendant has a significant and violent criminal history, dating back to 2009 when the defendant was just 14 years old. (PSR ¶ 32) The defendant was adjudicated delinquent for his first felony conviction at only 16 years old and involved the defendant shooting at another person with a firearm. (PSR ¶ 36) The defendant has nine adult convictions, of which four are felony convictions, including felon in possession and second-degree assault with a dangerous weapon (a firearm). (PSR ¶¶ 43, 46, 47, 48) The defendant's two current felony convictions represent his tenth and eleventh adult conviction, and his fifth and sixth felony conviction. Ten of the defendant's 15 criminal history points arise from his felony convictions. The defendant has either been in custody

11

or charged with a criminal offense nearly consistently from 2009 through 2023. (PSR ¶¶ 32-49, 91) The defendant has also had three other felony charges, and ten other misdemeanor and gross misdemeanor charges, dismissed. (PSR ¶¶ 53-65)

The defendant's 2014 federal conviction for felon-in-possession conspiracy involved the defendant being responsible for more than 25 firearms over a six-month period as a prominent member in a criminal street gang. (PSR ¶ 47) As noted at trial, the defendant admitted during his change-of-plea colloquy for that conviction that he agreed with others to acquire, store, and possess numerous firearms for known convicted felons who were prohibited from possessing firearms, that he agreed with others to obtain numerous firearms which were jointly possessed by him and others, and that he and others stored those firearms at his residence. (ECF 77) The district court imposed a 57-month sentence.

The defendant's 2019 second-degree assault conviction involved the defendant engaged in a shootout with another person, and resulted in a 36-month sentence. (PSR ¶ 48) Significantly, the defendant committed that felony assault after having been placed on federal supervised release for less than one month. (PSR ¶¶ 47, 48) As a result, the defendant's supervised release was revoked and he was sentenced to an additional 24 months' imprisonment on his prior federal conviction.

The defendant was again placed on supervised release in July 2021, and absconded from state supervision the next day, eventually generating state and federal violation arrest warrants, and only three months later, the defendant possessed the machinegun that is the subject of his convictions in the present case. (PSR ¶ 47)

12

### 3. Needs of Sentencing and Other 3553(a) Factors

Concurrent sentences of 120 months on each count of conviction, and a consecutive 24-month sentence on his second supervised-release violation, are amply warranted by the needs of sentencing and other Section 3553(a) factors. While some mitigating factors exist, such as the defendant's somewhat dysfunctional upbringing, bouts of homelessness, and mental and substance abuse history, aggravating factors also warrant consideration such as the serious nature of the current offenses, the defendant's extensive and violent criminal history, his ready access to and use of firearms even while on felony supervised release, his entrenched gang affiliation, and the patent lack of deterrence on the defendant's commission of serious felonies despite periods of significant imprisonment. *See Ferguson v. United States*, 623 F.3d 627, 632 (8th Cir. 2010) ("Congress specifically made general deterrence an appropriate consideration . . . and [the Eighth Circuit has] described it as 'one of the key purposes of sentencing.'") (quoting *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006)).

On balance, concurrent sentences of 120 months for the two counts of conviction, with a consecutive 24-month sentence imposed for his second supervised-release violation (again involving a firearm, but this time a machinegun) would serve the needs of sentencing to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to avoid sentencing disparities, and to protect the public from further crimes of the defendant.

## **CONCLUSION**

For all the foregoing reasons, the United States respectfully recommends that the Court impose concurrent sentences of 120 months' imprisonment for each count of conviction, with concurrent three years' supervised release, including a condition that the defendant be subject to search based on reasonable suspicion of contraband or other supervised release violation. Additionally, the United States respectfully recommends that the Court impose a consecutive 24-month sentence for his second supervised-release violation, which again involved a firearm, but this time a machinegun with a high-capacity magazine.

Respectfully submitted,

Dated: May 22, 2023

ANDREW M. LUGER
United States Attorney

/s/ *Benjamin Bejar*

BY: BENJAMIN BEJAR (# 351131)
ALBANIA CONCEPCION (# 401536)
Assistant United States Attorneys